IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NIGHBERT LAND COMPANY,

        Plaintiff,

v.                                                CIVIL ACTION NO. 2:19-cv-00435

CONSOL OF KENTUCKY, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant and Cross-Claimant CONSOL of Kentucky LLC's ("Consol") Motion for Judgment on the Pleadings, (ECF No. 37), and Third-Party Defendant James Booth's Cross Motion for Judgment on the Pleadings. (ECF No. 42.) For the reasons discussed more fully below, the motions are **DENIED**.

## I.   BACKGROUND

This action arises from the alleged breach of a land lease agreement by Defendants Consol and Southeastern Land, LLC, ("Southeastern") for failing to pay certain royalties to Plaintiff Nighbert Land Company ("Nighbert") for the transportation of coal across the leased premises. (ECF No. 1-1 at ¶¶ 5, 8–13.) Much of the technical details of this transaction are spelled out in detail in this Court's order denying Nighbert's motion for summary judgment, entered on June 5, 2020. (*See* ECF No. 41.) Therefore, in the interest of expediency, the Court shall set forth only the relevant facts for the determination of the instant motion.

Nighbert was the lessor and Consol the lessee, as a successor-in-interest, under a certain coal lease (the "Lease") in 2005. (ECF No. 1–1 at ¶¶ 1, 3.) On or around July 19, 2016, Consol

entered into a Purchase and Sale Agreement ("PSA") with Southeastern, whereby Consol assigned certain mining assets in Logan and Mingo Counties, West Virginia, including the Lease (the "Lease Assignment"). (ECF No. 22 at ¶ 8.) As a part of the PSA, third-party Defendant James H. Booth ("Booth") executed a Performance and Payment Guarantee (the "Guarantee"), in which he personally guaranteed Southeastern's performance under the PSA. (*Id.* at ¶ 10.)

On April 30, 2019, Nighbert initiated this action in the Circuit Court of Mingo County and sought a monetary judgment against Consol and Southeastern for an alleged breach of the Lease. (ECF No. 1–1.) The action was subsequently removed to this Court. (*See* ECF No. 1.) In the Complaint, Nighbert asserted that it never consented to the assignment of the Lease, which was required under the terms of the Lease. (ECF No. 1–1 at ¶ 7.) During this litigation, Consol subsequently filed a cross-claim against Southeastern in which it alleged a breach of the PSA, (ECF No. 31), and a third-party complaint against Booth in which it alleged a breach of the Guarantee. (ECF No. 22).

Booth filed his answer to the third-party complaint on February 7, 2020. (ECF No. 30.) Relevant to the instant motion, Booth asserted the following affirmative defenses:

> The causes of action asserted by the Third-Party Complaint are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, setoff, accord and satisfaction, and all other applicable affirmative defenses set forth in Fed. R. Civ. P. 8 or 12 as may be available and identified by him as discovery proceeds in this matter.
>
> \*\*\*
>
> Plaintiff's claims are barred, in whole or in part, by any defenses asserted in this action by the principal borrower, Southeastern Land, LLC.
>
> \*\*\*
>
> If this Court finds that the Assignment between Consol and Southeastern is invalid, then the Plaintiff's claims are barred.
>
> \*\*\*

2

> [Booth] disputes the amounts Plaintiff claims are owed and demands an accounting of the amount Plaintiff claims he owes.

(*Id.* at 6–7.)

On March 5, 2020, Southeastern filed its answer to the crossclaim filed against it by Consol. (ECF No. 32.) Relevant here, Southeastern asserted the following affirmative defense:

> [Consol's] claims for breach of contract are barred, in whole or in part, by [Consol's] alleged first breach of the contract between it and Southeastern.

(*Id.* at 7.) This defense is referred to by both Southeastern and Booth as the "first breach" defense. (*See id.*; ECF No. 42 at 4.)

Consol filed the instant motion for judgment on the pleadings on June 1, 2020. (ECF No. 37.) Southeastern timely filed its response in opposition on June 15. (ECF No. 43.) Booth timely filed his response on June 15, and also filed a cross-motion for judgment on the pleadings. (ECF No. 42.) Consol did not file a reply. Therefore, this motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

"A motion under 12(c) is useful when only questions of law remain." *In re: Coloplast Corp. Pelvic Support Sys Prod. Liab. Litig.*, Civ. Action No. 2:6-cv-01562, 2016 6901776 at *1 (S.D. W. Va. Nov. 22, 2016) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004)).

> [A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute . . . and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, [and] whatever is central or integral to the claim for relief or defense[.]

*Id.*

When presented with a motion under Rule 12(c) of the Federal Rules of Civil Procedure, the Court applies the same standard as it would when presented with a motion to dismiss pursuant to Rule 12(b)(6). *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012). A motion for judgment on the pleadings, therefore, "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager*, 741 F.3d at 474.

The Court may reach the merits of an affirmative defense when ruling on this type of motion "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Pursuant to Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Where a written instrument is "integral to and explicitly relied on in the complaint" and its "authenticity is not in question [,]" the Court may consider the instrument along with the pleadings without converting the motion into one for summary judgment. *Federal Ins. Co v. Southern Lithoplate, Inc.*, 7 F.Supp.3d 579, 583 (E.D.N.C. 2014); *see also Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999) (discussing standard in context of Rule 12(b)(6)). Ultimately, "[t]he court may grant a motion for judgment on the pleadings and dismiss a plaintiff's claims with prejudice when the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Buie v. BFGoodrich Textile Chems., Inc.*, 60 F. Supp. 2d 522, 522 (W.D. N.C. 1999).

### III. DISCUSSION

In its motion, Consol argues that Southeastern is liable to it under the PSA[1] for any amount Consol has been or may be ordered to pay to Nighbert. (ECF No. 38 at 2.) Consol further asserts that Booth is therefore liable to Consol under the Guarantee. (*Id.*) Specifically, Consol argues that Southeastern, in executing the PSA, promised the following:

> [Southeastern] shall assume, become obligated for, and hereby agrees to timely fulfill, perform, pay and discharge (or cause to be timely fulfilled, performed, paid or discharged), the following liabilities, and only the following liabilities, of [Consol] (collectively, the "**Assumed Liabilities**"):
>
> (b) . . . all Liabilities under, relating to or arising from any of the Purchased Assets accruing or arising after the Closing Date;
>
> (c) . . . all Liabilities for any violation of, or obligation under, any Applicable Law with respect to the Purchased Assets accruing or arising after the Closing Date;
>
> (d) . . . all Liabilities for Taxes imposed on the Purchased Assets for periods after the Closing Date;
>
> (e) . . . all Liability arising from or incurred in connection with any alleged breach, or an actual breach, of the terms of any of the Coal Leases identified on Schedule2.3(e)(the "**Cotiga North/Association Leases**") accruing or arising on or after the Closing Date[.]

(ECF No. 38–2 (emphases in original).)[2] Consol argues that Southeastern further promised to indemnify Consol for payments to the lessor, Nighbert:

---

[1] Because the PSA and Guarantee are attached and integral to the pleadings herein, the Court considers the PSA and Guarantee without converting this motion to a motion for summary judgment. *See* Fed. R. Civ. Pro. 10(c).

[2] The PSA defines "liability," and its plural, very broadly:

> "**Liability**" or "**Liabilities**" means any and all liabilities or obligations of any kind, character or description, whether known or unknown, absolute or contingents, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, executor, determined, determinable or otherwise, including, all claims, causes of actions, payments, charges, judgments, assessments, liabilities, losses, damages, penalties, fines or costs and expenses, including any attorneys' fees, legal or other expenses incurred in connection therewith and including liabilities, costs, losses and damages for personal injury or death or property damage.

5

> [Southeastern] shall indemnify [Consol] for any cost, Liabilities, Loss, and expense of any kind or nature, known or unknown, foreseeable or unforeseeable, contingent or otherwise, [Consol] suffers from time to time related to any of the Cotiga North/Association Leases as a result of, arising from or due to [Consol]'s guarantee obligation thereunder or under the applicable Lease Guarantee Agreement.

(ECF No. 38–5.)

Consol additionally argues that Booth, "[i]n order to induce [Consol] to enter into" the PSA, promised Consol that Booth would personally guarantee all of Southeastern's obligations to Consol:

> To secure the full and punctual payment and performance by [Southeastern] of all present and future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by [Southeastern] relating to (i) the Cotiga North/Association Leases and (ii) the CAT Equipment, the New CAT Financing and/or the CAT Equipment Lease, in each case, including all costs, expenses and fees (including the reasonable fees and expenses of [Consol]'s counsel) in any way relating to the enforcement of [Consol]'s rights under this Agreement or any of the other agreements listed herein (the "Cotiga North and CAT Obligations"), [Southeastern] agrees that, at Closing, [Southeastern] shall cause [Booth] to execute the Performance Guarantee. In the event that [Southeastern] fails to timely perform any of the Cotiga North and CAT Obligations, [Consol] may, after any notice required by, and any cure period provided for in, this Agreement, resort to the Performance Guarantee.

(ECF No. 38–5.) Booth executed a Performance and Payment Guarantee, which set out the following terms:

> **NOW THEREFORE**, for and in consideration of the direct and indirect benefits derived by [Booth] from the transactions under the [PSA], and in order to induce Beneficiaries [which includes Consol] to enter into the [PSA] and to consummate the transactions contemplated therein, [Booth], the primary owner of [Southeastern] hereby agrees as follows:
>
> **1.** *Guarantee.* Subject to the terms hereof, [Booth] absolutely, unconditionally and irrevocably guarantees the following (collectively, the "***Obligations***"): (a) To the MC Beneficiaries [including Consol] the full and punctual payment and performance of all present and future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by

---

(ECF No. 38–4.) This definition does not bear on the Court's decision on this issue, but for clarity's sake, it is restated here.

> [Southeastern] under or related to the Cotiga North/Association Leases [including the Lease], including without limitation any such obligations, liabilities, covenants and agreements set forth in or arising under the [PSA], after the Closing Date . . . .;
>
> * * *
>
> (c) All costs, expenses and fees (including the reasonable fees and expenses of Beneficiaries' counsel) in any way relating to the enforcement or protection of Beneficiaries' rights hereunder; [not to exceed six million dollars].
>
> * * *
>
> **2.** ***Guarantee Absolute and Unconditional.*** Subject to Section 1, [Booth] guarantees that the Obligations will be performed or paid, as applicable, strictly in accordance with the terms of the [PSA] . . . . [Booth] agrees that, subject to Section 1, his liability for the Obligations under this Guarantee is irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired or otherwise affect by, and [Booth], to the fullest extent permitted by applicable law, hereby irrevocably waives any defenses to enforcement he may have (now or in the future) by reason of:
>
>> (a) Any illegality, invalidity or unenforceability of any Obligation or the [PSA] or any related agreement or instrument, or any law, regulation, decree or order of any jurisdiction or any other event affecting any term of the Obligations[.]

(ECF No. 22–2 at 1–2 (emphases in original).) In light of the foregoing, Consol asserts that both Southeastern and Booth are liable to it for payments made or for payments it might be required to make to Nighbert, as well as Consol's costs, fees, and expenses in enforcing its rights under the PSA. (ECF No. 38 at 11.)

Booth responds that, generally, Consol has failed to meet the standard required for granting a motion for judgment on the pleadings because of the existence of a material fact that remains in dispute, which he asserted as an affirmative defense in his answer to the third-party complaint. (ECF No. 42 at 6.) In particular, Booth argues that the Lease Assignment itself is invalid, or that a disputed material fact exists with respect to its validity. (*Id.*) Furthermore, Booth argues that he is actually entitled to judgment on the pleadings based on this affirmative defense, namely that the Lease Assignment was invalid. (*Id.* at 8.) From there, Booth argues that if the Lease Assignment

7

is invalid, then his personal guarantee is void and unenforceable for a lack of consideration and, simultaneously, that the "first breach" doctrine prevents Consol from enforcing the guarantee. (*Id.* at 8–9.) Finally, Booth disputes the total amount that Consol has claimed it is owed, creating yet another material fact in dispute that would render judgment on the pleadings inappropriate at this time. (*Id.* at 10.)

Southeastern primarily argues, like Booth, that the Lease Assignment itself was invalid.[3] (ECF No. 43 at 4.) Because the Lease Assignment was allegedly invalid, Southeastern asserts that Consol cannot enforce that same contract because of its "first breach." (*Id.* at 5.) Southeastern argues that Consol failed to deliver adequate consideration under the Lease Assignment—the valid assignment of the lease itself—because Consol never received the consent of Nighbert to assign said lease to Southeastern. (*Id.* at 7–8.) Because of this failure, Southeastern contends that Consol committed the first material breach of the contract and is therefore precluded from enforcing it. (*Id.* at 8–9.)

Upon careful consideration, this Court finds that Consol has failed to demonstrate that there are no disputes over material facts such that judgment may be rendered on the pleadings. While Booth and Southeastern extensively argue that judgment cannot be granted to Consol based on a "first breach" theory, and in fact, that judgment should be rendered in their favor, the Court will not advance that far into this analysis to determine issues of fact. To do so would be antithetical to the purpose of a Rule 12(c) motion. *See Drager*, 741 F.3d at 474. Rather, upon examining the pleadings and exhibits attached thereto, the Court finds apparent that there is still a question of material fact as to the Lease Assignment's validity. If the Lease Assignment was invalid, then so too is the Guarantee for lack of consideration. *See Dan Ryan Builders, Inc. v. Nelson,* 230 W.Va.

---

[3] Southeastern also "joins in, adopts and restates" the entirety of Booth's Response in Opposition and Cross Motion for Judgment on the Pleadings, (ECF No. 42). (ECF No. 43 at 1.)

281, 287, 737 S.E.2d 550, 556 (2012) ("The elements of a contract are an offer and an acceptance supported by consideration."); *Cook v. Heck's Inc.,* 176 W.Va. 368, 373, 342 S.E.2d 453, 458–459 (1986) ("Consideration is also an essential element of a contract."); Syl. Pt. 1, *Thomas v. Mott,* 82 S.E. 325 (1914) ("No promise is good in law unless there is a legal consideration in return for it."); *Sturm v. Parish,* 1 W.Va. 125, 144 (1865) ("That a parol contract or promise without consideration is void, is too well established to require any comment.").

The critical allegation is found in Nighbert's original complaint. There, Nighbert alleges that, "Nighbert has been informed that Consol had assigned its interest in the Lease to Southeastern. Nighbert has never consented to that assignment, and consent is required under the terms of the Lease." (ECF No. 1–1 at ¶ 7.) The corresponding section of the Lease to which Nighbert refers establishes that "[Consol] shall not sell, assign or transfer this Lease without prior written consent of [Nighbert]."[4] (ECF No. 1–1, Ex. A, § 18.) Consol admitted to the assignment, but denied the remainder of this allegation in its answer. (ECF No. 4 at ¶ 7.) It should go without saying that, without more, this demonstrates a fact in dispute. As demonstrated below, this factual dispute directly affects the parties' positions regarding the Guarantee and the PSA.

Further, both Booth and Southeastern have asserted affirmative defenses in their respective answers that directly address the challenged validity of the Lease Assignment. In his seventh affirmative defense, Booth asserts that, "[i]f this Court finds that the [Lease] Assignment between Consol and Southeastern is invalid, then [Consol]'s claims are barred." (ECF No. 30 at 7.) Southeastern similarly asserts that "[Consol]'s claims for breach of contract are barred, in whole

---

[4] This section also establishes three exceptions to this requirement of written consent. First, written consent is not necessary if the assignment or transfer of the Lease is to a "wholly-owned subsidiary or an affiliate of [Consol]." (ECF No. 1–1, Ex. A, § 18.) Second, written consent is not required if the assignment or transfer is made to a "third party with a reasonable experience in the mining, marketing, and processing of coal if the third party has a net worth of at least $35,000,000[.]" (*Id.*) Third, and finally, written consent would not be required if Consol assigned or transferred the Lease to a third party if Consol—or Consol Energy, Inc.—guaranteed the performance of the terms of the Lease by the third-party. (*Id.*)

or in part, by [Consol]'s alleged first breach of the contract between it and Southeastern."[5]  (ECF No. 32 at 7.)  Therefore, whether Consol complied with the assignment provision of the Lease is directly at issue, which subsequently affects whether the PSA between Southeastern and Consol itself is valid and enforceable, along with Booth's Guarantee.  Consol has not established that the assignment was valid, and therefore cannot establish at this juncture that Booth and Southeastern are liable to it.

Further still, this Court is cognizant of the several concurrent lawsuits involving the parties.  Those cases are *Wahoowa Inc., et al. v. Consol of Kentucky, LLC, et al.*, Case No. 3:19-cv-00717 (the "Wahoowa Case"); *Cotiga Development Company, et al., v. Consol Energy, Inc, et al.*, Case No. 19-C-4 (the "Cotiga Case"); *Summit Community Bank, Inc. v. Southeastern Land, LLC, et al.*, Case No. 2:19-cv- 00794 (the "Summit Case"); and the instant case.  Each case addresses the issue of whether the assignment of certain leases from Consol to Southeastern was valid and enforceable.[6]  (*See* ECF No. 42 at 2.)  Two of these, the Wahoowa Case and the Cotiga Case, already have decisions addressing the assignment restriction provision in question.  In the Wahoowa Case, Judge Copenhaver concluded that the term "lessee" in the provision was ambiguous, thus precluding summary judgment for either party.  *Wahoowa Inc., et al. v. Consol of Kentucky, LLC, et al.*, Case No. 3:19-cv-00717, 2019 WL 2030136 at *6 (S.D. W. Va. May 8,

---

[5] The "first breach" doctrine establishes that a party who first materially breaches a contract is not entitled to enforce the contract against the other party for a subsequent breach. *See Standard Oil Company, Inc. v. Consolidation Coal Co.*, No. 15-0655, 2016 WL 6078570, * 4 (W.Va. October 17, 2016) ("The gist of the doctrine of 'first breach' is that the 'party who commits the first breach of a contract is not entitled to enforce it, or to maintain an action thereon, against the other party for his subsequent failure to perform.'") (quoting *Hurley v. Bennett*, 176 S.E. 171, 175 (Va. 1934).

[6] The Court recognizes that while the lessor in each case is different, each lease has an identical restriction on assignments and transfers to the one above. (ECF No. 42 at 2.)

2019).[7] The parties subsequently filed a Voluntary Dismissal by Stipulation in the Wahoowa Case, in which the parties agreed to be bound by the interlocutory decision by Judge Copenhaver that the assignment restriction provision was ambiguous. (ECF No. 42–2 at 1–2.)

The Cotiga Case, however, found that the Lease Assignment was invalid and unenforceable because it did not comply with the assignment restriction provision. (*See generally* ECF No. 42–3.) Specifically, Judge Thompson of the Circuit Court for Mingo County found as follows:

> The Court finds that the lease language is plain and unambiguous and expresses the intent of the parties and is, therefore, not subject to judicial construction. . . . Because [Consol] is the Lessee in this transaction, the assignment was clearly improper according to the terms of the lease and Plaintiffs are entitled to judgment as a matter of law on Count One of the Complaint.

(*Id.* at 8.) The determinations by the state and federal courts in these closely-related actions, while not determinative here, nonetheless lend support to this Court's determination that a material fact remains in dispute in the present action.

The Court does not resolve any issues of fact in this analysis, and therefore declines to determine whether Booth and Southeastern are entitled to judgment on the pleadings based on a "first breach" theory and similarly declines to address the damages claimed by Consol. While this Court declines to resolve this issue of fact at this juncture, it does conclude that there remains a factual contest such that judgment pursuant to Rule 12(c) is inappropriate at this time.

Thus, the Court **DENIES** both Consol's motion for judgment on the pleadings, (ECF No. 37), as well as Booth's cross motion for judgment on the pleadings. (ECF No. 42.) Because the issue of the Lease Agreement's validity is better left to a contest on the merits, the Court ends its

---

[7] Judge Copenhaver also noted that, while Consol and Southeastern did not fulfill either the first or third exception to the written consent requirements noted above, there was an open question as to whether Southeastern satisfied the $35 million valuation in the second requirement. *Wahoowa Inc.*, 2019 WL 2030136 at *6. Judge Copenhaver noted, however, that "[f]rom all appearances, Southeastern was not worth $ 35 million at the time the assignment was made to it by COK; however, no evidence has been presented by either party related to the worth of Southeastern." *Id.*

11

analysis here and declines to address Booth's and Southeastern's remaining arguments as to the validity of the Lease Assignment.

IV. CONCLUSION

Therefore, based on the foregoing, the Court **DENIES** Consol's motion for judgment on the pleadings, (ECF No. 37), and **DENIES** Booth's cross motion for judgment on the pleadings. (ECF No. 42.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 26, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE